**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Steven L. Cairns, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>GMAC Mortgage Corporation, a Pennsylvania corporation, et al.,<br><br>    Defendants. | No. CIV 04-1840-PHX-SMM<br><br>**MEMORANDUM OF DECISION AND ORDER ON MOTION FOR SUMMARY JUDGMENT** |

Pending before the Court is the Motion for Summary Judgment (Doc. 94) filed by Defendant Equifax Information Services LLC ("Defendant"), pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs have brought claims against Defendant alleging violations of the Fair Credit and Reporting Act, 15 U.S.C. §1681. The parties have had the opportunity to submit evidence and briefing, and the Court would not find oral argument helpful in resolving this matter. Accordingly, the Court finds the pending motion for summary judgment suitable for decision without oral argument.[1] After considering the written arguments of the parties, the Court makes the following rulings.

---

[1] See LRCiv 56.2; LRCiv 7.2(f); Lake at Las Vegas Investors Group, Inc. v. Pacific Malibu Dev. Corp., 933 F.2d 724, 728-29 (9th Cir. 1991) ("When a party has an adequate opportunity to provide the trial court with evidence and a memorandum of law, there is no prejudice" when oral arguments are not held on motions for summary judgment.)

## BACKGROUND

On March 10, 2003, Plaintiffs filed chapter 7 bankruptcy. At the time, they lived in Arizona and owned a home in Washington State for which a first mortgage was held by PCFS. Upon filing for bankruptcy, which included the PCFS debt, the Plaintiffs abandoned the home in Washington State. During the bankruptcy, and prior to discharge, PCFS sold or transferred the Plaintiffs' mortgage to GMAC mortgage. On July 2, 2003, the mortgage was discharged in the Plaintiffs' bankruptcy. On July 15, 2003, Mr. Cairns obtained a copy of his "credit report" from Defendant Equifax. The report correctly showed the PCFS tradeline, and noted that it was included in the bankruptcy. Likewise, an August 19, 2003 Equifax report correctly showed only the PCFS tradeline as included in the bankruptcy.[2]

In or around mid June 2004, approximately one year subsequent to the bankruptcy, the Plaintiffs were denied credit during an attempt to purchase a used vehicle. Plaintiffs understood that the reason for the denial was a report of a foreclosure on their credit report(s). On June 29, 2004, the Plaintiffs contacted Equifax and explained that the PCFS account and the GMAC account were in fact the same debt, and the GMAC had therefore been included in and discharged by their 2003 bankruptcy. Thereafter, Equifax updated Ms. Cairns' report to show that the GMAC account was included in the bankruptcy; however, Mr. Cairns' report was already showing the GMAC account as included in the bankruptcy.

Plaintiffs allege that over the period of just a few months, Equifax changed the reporting of GMAC's tradeline on the Cairns' Equifax credit reports from including bankruptcy to 180 days past due and a foreclosure. Equifax also allegedly changed its reporting of the PCFS tradeline, the predecessor to GMAC and the original holder of the debt, from included in bankruptcy to 120 days past due. Further, Plaintiffs allege that these

---

[2] See 11 U.S.C. § 541(defining property included in bankruptcy estate). The term "included in bankruptcy" refers to the property included in the bankruptcy estate at the time the bankruptcy was filed.

- 2 -

1  changes were made despite the fact that Equifax had in its possession documents from the
2  Cairns which showed the debt included in their Chapter 7 bankruptcy filed in March 2003.

## STANDARD OF REVIEW

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the nonmoving party, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Jesinger v. Nevada Federal Credit Union, 24 F.3d 1127, 1130 (9th Cir. 1994). Substantive law determines which facts are material. See Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986); see also Jesinger, 24 F.3d at 1130. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. The dispute must also be genuine, that is, the evidence must be "such that a reasonable jury could return a verdict for the nonmoving party." Id.; see Jesinger, 24 F.3d at 1130.

A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." Celotex, 477 U.S. at 323-24. Summary judgment is appropriate against a party who "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322; see also Citadel Holding Corp. v. Roven, 26 F.3d 960, 964 (9th Cir. 1994). The moving party need not disprove matters on which the opponent has the burden of proof at trial. See Celotex, 477 U.S. at 323-24. The party opposing summary judgment need not produce evidence "in a form that would be admissible at trial in order to avoid summary judgment." Id. at 324. However, the nonmovant "may not rest upon the mere allegations or denials of [the party's] pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); see Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-88 (1986); Brinson v. Linda Rose Joint Venture, 53 F.3d 1044, 1049 (9th Cir. 1995).

- 3 -

**DISCUSSION**

Equifax is a national consumer credit reporting agency that assembles and produces credit reports for use by its clients in evaluating the potential credit risk of consumers. As a consumer reporting agency, Equifax is governed by the Fair Credit Reporting Act, 15 U.S.C.§ 1681, et seq. ("FCRA"). The FCRA was enacted to protect consumers from the transmission of inaccurate information about them. Kates v. Croker Nat'l Bank, 776 F.2d 1396, 1397 (9th Cir. 1985). It was the product of congressional concern over abuses in the credit reporting industry. Guimond v. Trans Union Credit Information Co., 45 F.3d 1329, 1332 (9th Cir. 1995). The FCRA has a legislative history steeped in evidence of congressional intent to protect consumers from the transmission of inaccurate information. Id. Its contributors sought to create legislation to establish accurate, relevant, and current reporting practices. Id.

**A.      Violation of 15 U.S.C. § 1681**

**1. What Constitutes a Credit Report Under the Fair Credit Reporting Act**

Section 1681a(d)(1) provides relevant definitions for interpreting and applying FCRA. It reads in pertinent part:

(1) In general.

> The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness [FN1], credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for–
>
>   (A) credit or insurance to be used primarily for personal, family, or household purposes;
>   (B) employment purposes; or
>   (C) any other purpose authorized under section 1681b of this title.

15 U.S.C.A. § 1681a.

Equifax avers that Plaintiffs have no claim under FCRA because they have failed to show that the GMAC account appeared on a "credit report". They continue, "[a] credit report does

- 4 -

1  not include a credit file disclosure or copy that the Cairns may have received for their own
2  use, but is one that is used for credit granting purposes or some other purpose delineated by
3  the FCRA." (Doc. 95). The Court notes that Equifax failed to cite any authority supporting
4  this assertion. Further, the Court finds that, in viewing the facts in the light most favorable
5  to the nonmoving party, Plaintiffs have sufficiently alleged that they used or intended to use
6  the reports they received by Equifax in whole, or in part, for the purpose of serving as a
7  factor in establishing the their eligibility for credit for personal, family, or household
8  purposes. Accordingly, Plaintiffs have established, for the purpose of surviving summary
9  judgment, that the reports received may fall within the purview of 15 U.S.C.A. § 1681a.

10  Next, Equifax argued that in order to establish a claim under 15 U.S.C.A. § 1681e(b),
11  Plaintiffs must present evidence that a creditor or third party learned of the inaccurate
12  derogatory information contained in the reports. However, in <u>Guimond</u>, the Ninth Circuit
13  held that a denial of credit is not a prerequisite to recovery under the FCRA. <u>Guimond v.
14  Trans Union Credit Information Co.</u>, 45 F.3d at 1333 (finding that a failure to comply with
15  § 1681e(b) is actionable even absent a denial of credit. Further concluding that the district
16  court erred in finding that any liability under § 1681e(b) was predicated, as a matter of law,
17  on the occurrence of some event-denial of credit or transmission of the report to third parties-
18  resulting from the compilation and retention of erroneous information). Accordingly, the
19  Court concludes that despite Defendant's assertion otherwise, the fact that Plaintiffs did not
20  present evidence that the reports were given to third parties does not preclude Plaintiff from
21  surviving summary judgment.

### 2. Reasonableness of Procedures Pursuant to 15 U.S.C. § 1681e(b)

23  "Whenever a consumer reporting agency prepares a consumer report it shall follow
24  reasonable procedures to assure maximum possible accuracy of the information concerning
25  the individual about whom the report relates." <u>Guimond v. Trans Union Credit Information
26  Co.</u>, 45 F.3d at 1333. It is clear that liability under § 1681e(b) is predicated on the
27  reasonableness of the credit report agency's procedures in obtaining credit information. <u>Id</u>.

(citing Cahlin v. General Motors Acceptance Corp., 936 F.2d 1151, 1156 (11th Cir.1991); Bryant v. TRW, Inc., 689 F.2d 72, 77 (6th Cir.1982); Thompson v. San Antonio Retail Merchants Ass'n, 682 F.2d 509, 513 (5th Cir.1982); Ladner v. Equifax Credit Information Services, 828 F.Supp. 427, 430 (S.D.Miss.1993); Boothe v. TRW Credit Data, 768 F.Supp. 434, 437 (S.D.N.Y.1991).

For a consumer to establish a prima facie violation of 15 U.S.C.§ 1681e, he or she must "present evidence tending to show that a credit reporting agency prepared a credit report containing inaccurate information." Guimond v. Trans Union Credit Information Co., 45 F.3d at 1333 (citing Cahlin, 936 F.2d at 1156). If he fails to satisfy this initial burden, the consumer, as a matter of law, has not established a violation of section 1681e(b), and a court need not inquire further as to the reasonableness of the procedures adopted by the credit reporting agency. Id.[3] As the Ninth Circuit has continuously recognized, because these cases are often fact driven, it is appropriate that the determination of reasonableness be reserved for a jury in the overwhelming majority of cases. Id. Thus, prior to sending a section § 1681e(b) claim to the jury, a credit reporting agency can usually prevail **only** if a court finds, as a matter of law, that a credit report was accurate. Id. (emphasis added).

An inquiry into the reasonableness of the procedures utilized by Equifax in acquiring information must focus on whether its procedures used in preparing the Cairns' reports were sufficiently reasonable to assure maximum accuracy. Id. Equifax argues that "it is undisputed that Equifax maintains reasonable procedures both to assure maximum possible accuracy of its credit files and to perform reinvestigations." (Doc. 101). Clearly, from the assertions made in this case, this issue is far from undisputed. Furthermore, Plaintiffs have provided the Court with a plethora of evidence indicating the presence of a dispute regarding the accuracy of the reports and the reasonableness of Equifax's procedures. In general, the

---

[3] As Equifax correctly points out, FCRA does not make reporting agencies strictly liable for all inaccuracies. The agency can avoid liability if it establishes that an inaccurate report was generated notwithstanding the employment of reasonable investigatory procedures.

1  evidence reflects that Equifax reported the joint account of Mr. and Mrs. Cairns under both
2  GMAC and PCFS tradelines, as (1) included in bankruptcy, (2) not included in bankruptcy,
3  (3) 120-180 days delinquent (post-bankruptcy), and (4) in foreclosure. (Doc. 101-102). The
4  following is a more specific summary of the evidence presented by Plaintiffs:

5  On July 15, 2003, Mr. Cairns obtained a credit report from Equifax which showed
6  only the PCFS tradeline and correctly noted its inclusion in bankruptcy. (Plaintiffs' Exhibit
7  C). Likewise, an August 19, 2003, Equifax credit report showed only the PCFS tradeline and
8  correctly noted its inclusion in bankruptcy. (Plaintiffs' Exhibit D). In approximately June
9  of 2004, the Plaintiffs attempted to purchase a truck however, they were denied credit. It is
10 their understanding that a foreclosure on their credit report was the reason for the denial.
11 (Plaintiffs' Exhibit B). Consequently, the Cairns contacted Equifax to explain that the GMAC
12 and the PCFS tradelines were in fact the same debt, which had been included in and
13 discharged by their Chapter 7 bankruptcy. (SOF ¶17 ). Shortly thereafter, Equifax sent Mr.
14 Cairns notice of the results of its investigation dated July 7, 2004. The report showed that
15 the GMAC account was reporting as included in bankruptcy, with no mention of foreclosure.
16 However, the report also erroneously reported a "Date of Major Delinquency" of May 2004.
17 (Plaintiffs' Exhibit E). Equifax separately sent Ms. Cairns notice of the results of its
18 investigation dated July 7, 2004, showing that the GMAC account was currently being noted
19 as included in bankruptcy. However, Equifax also reported in Ms. Cairns' July 7, 2004 credit
20 report that the GMAC account was 120-149 days past due for October, November, and
21 December 2003, and January and February 2004. (Plaintiff's Exhibit F). On July 12, 2004,
22 Ms. Cairns called Equifax and disputed the derogatory payment history on the GMAC
23 tradeline. Consequently, Equifax deleted the payment history and sent Ms. Cairns a copy of
24 its investigation results dated July 12, 2004 which showed that the payment history had been
25 deleted. (SOF ¶18). Ms. Cairns thereafter received a complete Equifax credit report dated
26 July 19, 2004. The report showed a tradeline reported by GMAC and a separate tradeline
27 reported by PCFS for the identical mortgage debt. However, unlike the previous reports of

1 June and August 2003, this report did not reflect that the PCFS tradeline was included in
2 bankruptcy, rather it showed the PCFS tradeline as a current account with a status if "Over
3 120 Days Past Due".  It also reported a derogatory payment history from April 2002 through
4 June 2003. (Plaintiff's Exhibit G).  Mr. Cairns also received a report dated July 19, 2004.
5 This report reflected the GMAC tradeline had been changed to show it as included in
6 bankruptcy.  It also showed the PCFS account reporting as included in bankruptcy, as well
7 as having a derogatory payment history from April 2002 through March 2003. (Plaintiff's
8 Exhibit I).  Ms. Cairns received the next investigation results from Equifax dated July 29,
9 2004. This report showed that the PCFS account had been updated to show a current status
10 of "Pays as Agreed" and "Defaulted Loan" and "Claim Filed Against Guarantor", but did not
11 mention inclusion in bankruptcy.  It also showed a delinquent payment history from April
12 2002 through June 2002. (Plaintiff's Exhibit H).  In response to a call Mr. Cairns placed on
13 July 13, 2004, to Equifax to dispute the GMAC tradeline, Equifax sent Mr. Cairns a report
14 of its reinvestigation dated August 11, 2004.  The report showed that Equifax was reporting
15 the GMAC tradeline with a balance owing of $59,459, an amount past due of $18, 923, and
16 a current status of "Over 120 Days Past Due".  The report also reflected that Equifax was
17 reporting a delinquent payment history for July, August, and September 2003 of "180 or
18 More Days Past Due" and October 2003 through April 2004 as a "Foreclosure".  The report
19 also stated that "Equifax has verified that this item has been reported accurately". (Plaintiffs'
20 Exhibit J).

21      Plaintiffs contend that these errors pose numerous problems for Defendant. First,  the
22 evidence reflects that Equifax's system has permitted the reporting of an account as included
23 in a bankruptcy filed in March 2003, while at the same time reporting a post-bankruptcy
24 delinquent payment. Second, Equifax's system has reported the same joint account as being
25 in two different statuses, e.g. Mr. Cairns' report shows the PCFS account as included in
26 bankruptcy, whereas Ms Cairns' report shows a current owed amount with the notations of
27 "Defaulted" and "Claim filed Against Guarantor".  Finally, the evidence raises a genuine
28

- 8 -

issue as to the reasonableness of the process by which Equifax verifies its information. Determining whether the inconsistencies constitute evidence of the employment of unreasonable procedures for preventing inaccuracies is a question of fact and therefore is not for this Court to decide. Such a decision would put this Court in the role of the fact finder and, absent any authority stating otherwise, this question is reserved for the jury. "Questions regarding the reasonableness of procedures adopted by credit reporting agencies to ensure maximum accuracy in its reports, and questions as to whether the agency actually followed such procedures will generally be decided by jury in the overwhelming majority of cases under FCRA." Guimond v. Trans Union Credit Information Co., 45 F.3d at 1333. Therefore, the determination as to whether Equifax's procedures for preparing a customer's file are reasonably designed to prevent inaccuracies pursuant to 15 U.S.C. § 1681e(b) and whether the agency followed its procedures is reserved for the jury. Summary judgment is hereby **DENIED** as to 15 U.S.C. § 1681e(b).

**B.     15 U.S.C. §1681i**

The Court now turns to the Plaintiffs' allegation that Defendant violated 15 U.S.C. §1681i. To establish a right of relief under §1681i, a Plaintiff must demonstrate the following: (1) they notified Equifax directly of a disputed item on the credit file; (2) Equifax failed to reinvestigate free of charge and either record the current status of the disputed information or delete the item from the file, as required by §1681i(a)(5), within the 30-day period; (3) Equifax's failure to comply with the statute was negligent; and (4) Equifax's failure caused the Plaintiffs' injuries. 15 USC. §1681i(a)(1)(A); Acton v. Bank One Corp., 293 F.Supp.2d 1092, 1098 (D.Az. 2003).

Defendant asserts that by contacting GMAC regarding Mr. Cairns' dispute, it has complied with the statutory obligations regarding reinvestigation, without having to go

- 9 -

1   beyond the original source of the information.[4]   However, various United States Courts of
2   Appeals have found this limited attempt unsatisfactory. See Henson v. CSC Credit Servs.,
3   29 F.3d 280, 286-87 (7th Cir.1994); Stevenson v. TRW Inc., 987 F.2d 288, 293 (5th
4   Cir.1993); and Cushman v. Trans Union Corp,. 115 F.3d 220, 224 -225 (Third Cir. 1997).
5   In Henson, a state court judgment docket erroneously stated that an outstanding judgment
6   had been entered against the plaintiff. Based on this information, two credit reporting
7   agencies included erroneous information on their consumer reports regarding the plaintiff.
8   See Henson, 29 F.3d at 282-83. Consequently, the plaintiff sued the credit reporting agencies
9   pursuant to both § 1681e(b) and § 1681i. See id. at 284, 286. The Seventh Circuit upheld the
10  district court's dismissal of the § 1681e(b) claim and reversed the district court's dismissal
11  of the § 1681i claim, distinguishing between the obligations imposed by the two sections of
12  the statute, explaining:

> A credit reporting agency that has been notified of potentially inaccurate information in a consumer's credit report is in a very different position than one who has no such notice.... [A] credit reporting agency may *initially* rely on public court documents, because to require otherwise would be burdensome and inefficient. *However, such exclusive reliance may not be justified once the credit reporting agency receives notice that the consumer disputes information contained in his credit report.* When a credit reporting agency receives such notice, it can target its resources in a more efficient manner and conduct a more thorough investigation.

19  Id. at 285-87 (emphasis added).

20      Similarly, in Stevenson, 987 F.2d at 293, inaccurate information appeared on credit
21  report. See id. The credit reporting agency sent written forms to the credit granting agencies
22  that had originally supplied information concerning the consumer, and relied on those credit
23  grantors to make the conclusive determination of whether the information was accurate. See
24  id. at 293. The Fifth Circuit held this to be insufficient to satisfy the statutory obligations.

---

[4] Defendant also argues that subsequent to Ms. Cairns' complaints, Equifax updated the account pursuant to its established procedure.

- 10 -

It explained: "In a reinvestigation of the accuracy of credit reports [pursuant to § 1681i(a)], a credit bureau must bear some responsibility for evaluating the accuracy of information obtained from subscribers." Id. (citing Swoager v. Credit Bureau of Greater St. Petersburg, 608 F.Supp. 972, 976 (M.D.Fla.1985)). Further, it noted that the plain language of the statute unequivocally places the burden of reinvestigation on the consumer reporting agency. See Stevenson, 987 F.2d at 293. The FCRA is a clear manifestation of Congress's intent that consumer reporting agencies, having the opportunity to reap profits through the collection and dissemination of credit information, bear "grave responsibilities" to ensure the accuracy of that information. 15 U.S.C. § 1681(a)(4). Consequently, the "grave responsibilit[y]" imposed by § 1681i(a) must necessarily consist of something more than parroting information received from the original sources. Therefore, a "reinvestigation" that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations set forth under the statute. Cushman v. Trans Union Corp., 115 F.3d 220, 224 -225 (Third Cir. 1997)(citing Stevenson, 987 F.2d at 293). Moreover, the Court finds it telling that Defendant's interpretation of § 1681i(a) would require it only to replicate the efforts it must undertake in order to comply with § 1681e(b), however, such a reading would render the two sections largely duplicative of each other. Considering the importance of statutory interpretation, the Court is hesitant to accept an interpretation that would render statutory language superfluous.

Plaintiffs contend that Equifax failed to conduct a reasonable review of the documents it received from Plaintiffs or consider the prior history of GMAC and PCFS on the accounts, resulting in Equifax's failure to realize that the account was previously included in the bankruptcy, and that the information it received was inconsistent considering the Cairns' account history. Considering the evidence of record, the Court finds that Plaintiffs have provided the Court with sufficient evidence to raise a genuine issue as to whether Equifax performed an adequate reinvestigate under 15 U.S.C. § 1681i, regarding the disputes raised

by Plaintiffs pertaining to the GMAC and PCFS tradelines. Therefore, Summary Judgment is hereby **DENIED** as to 15 U.S.C. § 1681i.

**C.    Damages Under the FCRA**

Plaintiffs contend that as a result and proximate cause of Defendant's actions, Plaintiffs have suffered and continue to suffer damages including, but not limited to, emotional distress, mental anguish, loss of sleep, physical illness, frustration, injury to reputation, humiliation, embarrassment, and loss of opportunity.

**1.    Actual or Statutory**

The FCRA provides for compensation in the form of actual damages and attorneys' fees if a consumer reporting agency negligently fails to comply with any provision of FCRA. 15 U.S.C. §1681o. Furthermore, where a reporting agency's noncompliance with any provision of FCRA is found to be willful, in lieu of actual damages, Section §1681n provides for statutory damages and compensation for attorneys' fees. Under the same section, a consumer may also recover punitive damages for willful noncompliance. 15 U.S.C. §1681n.[5]

As the Plaintiffs correctly articulated, the Ninth Circuit has previously recognized that damages may flow from a consumer being deterred from exercising his or her right to apply for credit as a result of inaccurate reporting until the erroneous information is deleted.

---

[5] Any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer in an amount equal to the sum of--

**(1)(A)** any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; or
**(B)** in the case of liability of a natural person for obtaining a consumer report under false pretenses or knowingly without a permissible purpose, actual damages sustained by the consumer as a result of the failure or $1,000, whichever is greater;
**(2)** such amount of punitive damages as the court may allow; and
**(3)** in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

15 U.S.C. § 1681n

1 Guimond v. Trans Union Credit Information Co., 45 F.3d at 1332 -1333.  In other words, 2 actual damages need not be pecuniary in nature. In many cases, the term "actual damages" 3 has been interpreted to include recovery for emotional distress and humiliation.  Id. (See 4 Johnson v. Department of Treasury, I.R.S., 700 F.2d 971, 984 (5th Cir.1983) (mental anguish 5 included as an element of recovery in FCRA claims); Thompson v. San Antonio Retail 6 Merchants Ass'n, 682 F.2d 509, 514 (5th Cir.1982); Millstone v. O'Hanlon Reports, Inc., 528 7 F.2d 829, 834-35 (8th Cir.1976); Bryant v. TRW, Inc., 487 F.Supp. 1234, 1240 8 (E.D.Mich.1980), aff'd, 689 F.2d 72 (6th Cir.1982); Jones v. Credit Bureau of Huntington, 9 Inc., 184 W.Va. 112, 117, 399 S.E.2d 694 (1990).

10 Accordingly, Plaintiffs must establish that they suffered emotional damages as a result 11 of Equifax's alleged failure to comply with FCRA.  The Court has previously determined that 12 whether there has been a violation of FCRA is a question of fact for the jury.  Therefore, the 13 question of damages, which rests on whether a violation of FCRA has occurred, will also be 14 reserved for the jury.

15 **2.      The Ninth Circuit's Standard for Proving Punitive Damages under the**
16 **FCRA**

17 Defendant argues that it is entitled to summary judgment as to Plaintiffs' punitive 18 damages claim because Plaintiffs are unable to establish that Defendant acted with the 19 requisite intent to substantiate such a claim.

20 In determining the state of mind necessary to establish punitive damages under FCRA, 21 the Ninth Circuit considered and adopted the Third Circuit's definition of "willfully," as that 22 term is employed in FCRA.  They concluded that a company is liable for a willful violation 23 of FCRA if it "knowingly and intentionally committed an act in conscious disregard for the 24 rights of others." Reynolds v. Hartford Financial Services Group, Inc., 435 F.3d 1081, 1085 25 (9th Cir. 2006) (citing Cushman v. Trans Union Corp., 115 F.3d 220, 226 (3d Cir.1997) 26 (quoting Philbin v. Trans Union Corp., 101 F.3d 957, 970 (3d Cir.1996) (as amended)). Like

27
28

the Third Circuit, the Ninth Circuit held that conscious disregard means "either knowing that policy to be in contravention of the rights possessed by consumers pursuant to the FCRA or in reckless disregard of whether the policy contravened those rights." Cushman v. Trans Union Corp, 115 F.3d at 227.

Plaintiffs contend that (1) Equifax had no system in place to assure the maximum possible accuracy of Plaintiffs' credit reports (2) Equifax's failed to conduct adequate independent re-investigation, and (3) Defendant disregarded the requirements of the FCRA. Defendant contends that the evidence is simply insufficient to sustain an award of punitive damages in that there is no evidence in the record to illustrate that Defendant consciously disregarded Plaintiffs' rights. Further, it contends that its investigative procedures, as well as its re-investigations comport with the requirements of FCRA, thereby proving a lack of any willful intent to injure Plaintiffs. Plaintiffs assert that Equifax had no system in place to assure the maximum possible accuracy of credit reporting and, moreover, failed to consider anything beyond the basic idea of reliability of sources in its reinvestigation procedures, thereby disregarding the clear requirements of the FCRA. Accordingly, Plaintiffs contend that the issue of willfulness and punitive damages should be reserved for the jury. The Court agrees.

Earlier, the Court found that there were material issues as to whether Equifax's alleged conduct was reasonable under FCRA. As to punitive damages, the Court no longer looks merely at reasonableness for the standard of conduct. The standard now is whether Equifax's alleged conduct rose to the level of willfulness or reckless disregard. It is clear that the evidence is conflicting. Consequently, it is the Court's decision that in this case, like in the overwhelming number of cases in which state of mind is dispositive, the issue of punitive damages is best left for the trier of fact to determine.

## CONCLUSION

Accordingly,

**IT IS ORDERED** that Defendant Equifax's Motion for Summary Judgment (Doc. 94) is hereby **DENIED in full**.

**IT IS FURTHER ORDERED** that the attorneys for each party <u>who will be responsible for trial of the lawsuit</u> shall **APPEAR** and **PARTICIPATE** in a Final Pretrial Conference on May 16th, at 4p.m. in courtroom # 605 on the sixth floor of the United States Courthouse, 401 West Washington Street, Phoenix, Arizona. Because the Final Pretrial Conference is held for the benefit of all parties, and further because the presence of all parties will facilitate frank discussion of the pertinent issues in the lawsuit, **each party, or a representative with binding settlement authority if the party is an entity**, shall attend the Final Pretrial Conference. At the Final Pretrial Conference, the Court shall set a firm trial date.

**DATED this 5th day of March, 2007.**

Stephen M. McNamee
United States District Judge